## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Hollis J. Larson and
Guy I. Greene,

        Plaintiffs,

   v.

Kelly Lake, Carlton County Sheriff;
Carlton County Jail; Paul Coughlin;
Brian Belich; Dave Kamunen; Jason
Wilmes; Cammi Werner; Travis
Warnygora; John Does, an unknown
number; and Jane Does, an unknown
number, sued in their individual and
official capacities,

        Defendants.

Case No. 17-cv-3551 (NEB/ECW)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss or Alternatively [for] Summary Judgment (Dkt. No. 98) ("Motion"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that the Motion be granted in part and denied in part.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiffs, proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 24, 2017. (Dkt. No. 1 at 1.) At the time of filing, Plaintiffs Hollis J. Larson ("Larson") and Guy I. Greene ("Greene") were inmates at the Carlton County Jail. (*Id.* at

2.)  Defendants included the Carlton County Sheriff, Kelly Lake ("Lake"); the Carlton County Jail, Jail Administrator Paul Coughlin ("Coughlin"); Deputy Sheriff Brian Belich ("Belich"); Minnesota Department of Corrections ("DOC") Commissioner Tom Roy ("Roy"); Jail Sergeant Jason Wilmes ("Wilmes"); Jail Sergeant Dave Kumanen ("Kumanen"); jail employees Cammi Werner ("Werner") and Travis Warnygora ("Warnygora"); and an unknown number of John Does and Jane Does ("Doe Defendants").  (*Id.*)  Plaintiffs filed this case as a putative class action, claiming a number of civil rights violations were occurring at the Carlton County Jail including lack of natural light, inadequate heat, inadequate legal resources for inmates, arbitrary practices involving disciplinary proceedings, unconstitutional treatment toward Native Americans, among other allegations.  (*See generally id.*)

Defendant Carlton County Jail was summarily dismissed pursuant to 28 U.S.C. § 1915A on October 6, 2017.  (Dkt. Nos. 9, 15.)  Plaintiffs moved to amend their complaint to remove Larson as a plaintiff, to add allegations specific to Greene, and moved for appointment of counsel.  (Dkt. No. 17.)  U.S. Magistrate Judge Katherine M. Menendez granted Plaintiffs' motion to amend, but denied appointment of counsel.  (Dkt. No. 20.)  On December 18, 2017, Greene filed the Amended Complaint (Dkt. No. 25) and a self-styled affidavit in support of the Amended Complaint (Dkt. No. 26).  After the Amended Complaint was filed, Roy moved to dismiss the Amended Complaint (Dkt. No. 30), Greene moved for class certification (Dkt. No. 37), and Greene moved to add Larson back as an additional Plaintiff (Dkt. No. 54).  On February 21, 2018, a Pretrial

Scheduling Order issued setting November 1, 2018 as the close of discovery and January 4, 2019 as the dispositive motion deadline.  (Dkt. No. 52.)

On May 11, 2018, Roy was dismissed from the case, as were Greene's claims for prospective injunctive relief.  (Dkt. No. 65 (adopting April 24, 2018 Report and Recommendation (Dkt. No. 62)).)  On June 25, 2018, Plaintiff's motion for class certification was denied.  (Dkt. No. 73.)  On July 9, 2018, Magistrate Judge Menendez permitted amendment of the Amended Complaint to add Larson as an additional Plaintiff and did not require him to file a second amended complaint.  (Dkt. No. 75 ("The Amended Complaint shall continue to be treated as the operative pleading in this matter and shall be construed as including the individual claims of both Mr. Green[e] and Mr. Larson.").)

The operative Amended Complaint seeks injunctive relief and compensatory and punitive damages.  (Dkt. No. 25 at 30.)  Plaintiffs filed a Motion to Appoint Counsel (Dkt. No. 92) and a Motion to Reopen Discovery (Dkt. No. 97), both of which were denied (Dkt. No. 105).[1]

On January 4, 2019, Defendants Lake, Carlton County Jail, Coughlin, Belich, Kumanen, Wilmes, Werner, and Warnygora (collectively the "County Defendants") filed

---

[1]    Plaintiffs claimed in their Motion to Reopen Discovery that they had timely served discovery on Defendants, but Defendants had allegedly refused to respond on the grounds that the discovery was untimely served.  (Dkt. No. 97 at 1.)  In its Order denying the Motion to Reopen Discovery, the Court permitted Plaintiffs, to the extent they were asserting in good faith that they served the discovery in question in time to be completed by November 1, 2018, to bring a motion to compel responses to that discovery that specified the date of service.  (Dkt. No. 102 at 2-3 & n.1.)  Plaintiffs did not bring any such motion to compel.

the present Motion to Dismiss or Alternatively for Summary Judgment.  (Dkt. No. 98.) The County Defendants' Motion is supported by the affidavits of Susan M. Tindal (Dkt. No. 101) and Coughlin (Dkt. No. 102), both of which include exhibits.  Greene filed a "Motion to Deny [or Not Grant] Summary Judgment for Defendants" and supporting affidavit and "Statement of Genuine Issues of Material Fact" (Dkt. Nos. 111-113), Larson filed a "Verified Memorandum of Law" in opposition to the Motion along with a declaration (Dkt. Nos. 118, 119), and Plaintiffs filed a joint supplemental memorandum[2] in opposition to the County Defendants' Motion (Dkt. No. 121).  The County Defendants filed their reply memorandum on March 13, 2019.  (Dkt. No. 122.)

Because Plaintiffs and Defendants have submitted evidence outside the pleadings and the Court has considered that evidence, the Court will treat the Motion as a motion for summary judgment.[3]  *See* Fed. R. Civ. P. 12(d).

**B.**    **Plaintiffs' Backgrounds**

**1.  Plaintiff Larson**

Larson was convicted of four sexual assault crimes in the early 1990s.  *In re Civ. Commitment of Larson*, A08-1188, 2009 WL 1049171, at *1 (Minn. App. Apr. 21, 2009).

---

[2]    The Court permitted Larson to file a separate memorandum in opposition to the Motion with an extension because Larson represented that Plaintiffs were initially not able to view video exhibits 12 and 16 submitted with Defendants' memorandum.  (Dkt. No. 117.)  Plaintiffs had the opportunity to view the video exhibits before filing their joint supplemental memorandum.  (Dkt. No. 121 ¶ 11.)

[3]    Plaintiffs agree that the Motion should be treated as a motion for summary judgment (Dkt. No. 121 ¶ 1) and, as noted above, discovery closed on November 1, 2018 (Dkt. No. 52).

He was scheduled to be released from prison on February 5, 2008, but four days prior, Goodhue County filed a petition to commit Larson as a sexually dangerous person. *Id.* The district court found that Larson met the criteria and involuntarily committed him to the Minnesota Sex Offender Program ("MSOP"), a decision which was affirmed on appeal. *Id.* at *8. On May 17, 2017, while at the MSOP - Moose Lake Facility, Larson was arrested by Moose Lake police for violation of probation and sent to the Carlton County Jail. (Dkt. No. 102-2, Ex. 2.) Larson has since served his sentence and is no longer incarcerated at the Carlton County Jail. (Dkt. No. 102 ¶ 15.) Larson currently resides at the MSOP - Moose Lake Facility. (Dkt. No. 54 at 1.)

### 2. Plaintiff Greene

Greene is also a civilly committed detainee at MSOP. (Dkt. No. 26 ¶ 4.) Greene was charged in two criminal cases occurring at MSOP - Moose Lake that are relevant to the Amended Complaint. (*See* Dkt. Nos. 101-1, 101-2.) First, in 2013 in Case No. 09-CR-13-1240, Greene pled guilty to Fourth Degree Assault at a Secure Treatment Facility in violation of Minn. Stat. § 609.2231, subd. 3a(b)(1). (Dkt. No. 101-1, Ex. 1 at 1.) Greene was sentenced to one year and one day at the Minnesota Correctional Facility - St. Cloud ("MCF - St. Cloud"), which was stayed for two years on the condition that Greene remain law abiding. (*Id.* at 2.) Second, in Case No. 09-CR-14-1518, Greene pled guilty in 2016 to Assault in the Fifth Degree within three years of previous conviction in violation of Minn. Stat. § 609.224, Subd. 2(b). (Dkt. No. 101-2, Ex. 2 at 1.) On November 16, 2016, Greene was sentenced to 365 days confinement at the Carlton County Jail. (*Id.* at 2.) This second conviction was a violation of Greene's condition to

remain law abiding in his first case, which resulted in an amended sentence to begin that day at MCF - St. Cloud. (Dkt. No. 101-1, Ex. 1 at 2.) Thus, on November 16, 2016, Greene was transferred to MCF - St. Cloud to serve his time beginning on November 16, 2016. (*Id.*)

Greene's sentence on the 09-CR-13-1240 conviction concluded in early 2017 and he was transferred back to MSOP - Moose Lake. (Dkt. No. 102 ¶ 13.) However, at that time, Greene still had time remaining on his 09-CR-14-1518 sentence, so Judge Leslie Beiers (the presiding judge in both cases) issued a warrant to place Greene in custody and be transported to the Carlton County Jail to serve the remainder of his second sentence. (*Id.*) On March 27, 2017, Carlton County Sherriff deputies transported Greene to the Carlton County Jail. (*Id.*; *see also* Dkt. Nos. 102-14, Ex. 14, 101-2, Ex. 2 at 7.) Greene has since served his sentence and is no longer incarcerated at the Carlton County Jail. (Dkt. No. 102 ¶ 15.) Greene is currently incarcerated at MCF - Rush City. (Dkt. No. 123.)

## C. Plaintiffs' Grievances to the Carlton County Jail

### 1. Larson's Grievances

On June 1, 2017, Larson submitted three inmate grievance forms about the conditions in the Carlton County Jail regarding: (1) lack of daylight in the cells (Dkt. No. 1-2, Ex. 1); (2) inadequate legal resources (Dkt. No. 1-2, Ex. 8); and (3) cold temperatures in the cells (Dkt. No. 1-2, Ex. 5). In response to the grievance about daylight, Defendant Coughlin marked the grievance resolved and noted that natural light "comes in through the courtyard to your current cell block." (*Id.*) Larson escalated the

6

grievance to Deputy Belich and stated that "VIRTUALLY NO natural light [] flows into the courtyard and there is absolutely no way that light flows from the courtyard windows can flow into the cells on blocks." (Dkt. No. 1-2, Ex. 2.) He also stated that the courtyard windows are glazed and the cell block windows have a fine metal mesh that collectively further block any light. (*Id.*) On June 12, 2017, Deputy Belich responded that he had "nothing to note beyond Jail Administrator Coughlin's comments." (Dkt. No. 1-2, Ex. 3.)

Coughlin responded to Larson's grievance about the alleged insufficient legal resources by marking it resolved and stating that the law library is filled using the most current books available to the jail, but the jail cannot provide every resource. (Dkt. No. 1-2, Ex. 8.) On June 5, 2017, Larson escalated his complaint to Deputy Belich, stating that the law library is unconstitutionally deficient because it lacks the U.S. Supreme Court reporter, a law dictionary, and instruction manual. (Dkt. No. 1-2, Ex. 9.) Deputy Belich's June 12, 2017 letter stated that he requested staff to look into establishing a proper list of resources and researching the purchase of these resources. (Dkt. No. 1-2, Ex. 3.)

Coughlin responded to Larson's cold temperature complaint by marking the grievance resolved, and stating that staff monitor the jail temperature, that it is in the range of 68-70 degrees on most days, and that Larson should not block the vents as that affects air flow. (Dkt. No. 1-2, Ex. 5.) Larson also escalated this complaint to Deputy Belich on June 5, 2017. (Dkt. No. 1-2, Ex. 6.) Deputy Belich had nothing to note beyond Coughlin's initial comments. (Dkt. No. 1-2, Ex. 3.)

7

On June 16, 2017, Coughlin sent an additional letter to Larson summarizing Larson's three grievances and the responses. (Dkt. No. 1-2, Ex. 4.) Coughlin also noted that Larson filed a grievance on June 5, 2017 regarding due process. (*Id.*; *see also* Dkt. No. 102-4, Ex. 4.) Coughlin stated that after advising Larson to read the handbook, he realized that the grievance section of the handbook had been accidentally removed and would be corrected in the next version of the handbook. (Dkt. No. 1-2, Ex. 4.) Despite that, Larson was given forms to appeal each of his grievances to Deputy Belich. Finally, Coughlin informed Larson that he had exhausted his appeals for each of the three grievances. (*Id.*)

On June 20, 2017, Larson filed an additional grievance about the temperatures in the jail cells, alleging cell temperature had been less than sixty-five degrees for more than two weeks. (Dkt. No. 102-9, Ex. 9.) Coughlin responded that a needed repair part should arrive soon, so the temperature should be fixed soon. (*Id.*) According to Coughlin, an electrical surge burnt out the system, and inmates were given extra blankets until the part was repaired. (Dkt. No. 102 ¶ 8.)

On June 22, 2017, Larson submitted Inmate Kite Forms ("kites") regarding the cleanliness of the jail. Larson alleged that the jail was forcing him to do work without monetary compensation by cleaning his cell (Dkt. No. 102-10, Ex. 10 at ECF-3), and that such work is cruel and unusual punishment (*id.* at ECF-2). Coughlin responded that the Inmate Handbook requires an inmate to keep their cell clean (*id.* at ECF-3) and directed Larson to a Minnesota statute permitting jails to require an inmate to keep their cell clean (*id.* at ECF-2). Coughlin also noted that the new law library books had arrived. (*Id.*)

8

On June 24, 2017—while in administrative segregation—Larson submitted a kite about his limited access to the law library while in segregation. (*Id.* at Dkt. No. 102-11 at ECF-6.) Coughlin responded that Larson can have access to the law library during the one hour a day in which he is out of segregation. (*Id.*)

### 2. Greene's Grievances

On June 12, 2017, Greene submitted a grievance alleging racial and religious discrimination because the Carlton County Jail was not offering Native American programming, despite offering programming for Christians. (Dkt. No. 102-15, Ex. 15 at ECF-8.) Greene asserted that Carlton County Jail's policies failed to offer "Native American Indians such as [him]self, pipe and drum ceremonies, tobacco offering and smudging," asked for "Native American programming," and asserted that Carlton County Jail was "denying [Native Americans'] religious rights." (*Id.*) On June 13, 2017, Greene submitted a second grievance regarding the lack of sunlight available for inmates and his inability to see green grass. (*Id.* at ECF-9.) On June 16, 2017, Coughlin responded to both grievances. Regarding the Native American programming, Coughlin stated: "We will provide any approved programming, but can't create programming if it's not available to us." (*Id.* at ECF-10.) Regarding the lack of sunlight and inability to see grass, Coughlin stated—much like he did to Larson—that Greene had access to a courtyard that has a window and that Greene's cellblock had a window to the courtyard. (*Id.*)

**D.      Plaintiffs' Disciplinary Offenses**

**1.  Greene's May 2017 Disciplinary Incident**

On May 19, 2017, Sergeant Wilmes reported an incident in which Greene had become agitated and disrespectful to Wilmes and other officers.[4]  (Dkt. No. 102-15, Ex. 15 at ECF-2.)  According to Wilmes' disciplinary report, Greene confronted Wilmes about a form related to another inmate's civil case that Greene sent to him the day before.  (*Id.*)  Wilmes received the form, but did not know what it was, so he recycled it.  (*Id.*)  Greene then became upset, raised his voice, and called Wilmes disrespectful names.  (*Id.*)  About a half hour later, Wilmes found the form in the recycling bin, and returned to discuss it with Greene.  (*Id.*)  Greene then became even more upset and disrespectful.  (*Id.*)  After Greene moved toward an accompanying officer, Wilmes and the officer escorted Greene from his current block (Block 3) to another block (Block 5) to lock him down.  (*Id.*)  Greene received 14 days loss of privileges for the incident.  (*Id.*)

On June 6, 2017, Greene submitted a grievance about the incident, arguing that Wilmes was retaliating against him by not allowing him to return to his original block and was denying him due process by not providing a description of the events.  (Dkt. No. 102-15 at ECF-3.)  Coughlin met with Greene on June 12, 2019 to discuss the grievance, but marked the grievance unresolved.  (*Id.*)  After the meeting, Coughlin submitted an incident report about Greene becoming agitated during the meeting.  (Dkt. No. 102-15 at ECF-6.)  Greene accused the Carlton County Jail staff of targeting him because he was

---

[4]      The Court has reviewed the video footage of the May 2017 incident.  (Dkt. No. 102-16, Ex. 16.)

committed to the MSOP.  (*Id.*)  Greene told Coughlin that he wanted to be transferred

back to his original block because he felt that he was in danger of harm in the new block.

(*Id.*)

### 2. Larson's June 2017 Disciplinary Incident

Defendant Werner submitted a disciplinary offense report about an incident with

Larson that took place on June 23, 2017.[5]  (Dkt. No. 102-11, Ex. 11 at ECF-14.)  The

report states that Werner was conducting a well-being check when she noticed Larson

and Greene wrapped in blankets and made a comment that upset Larson.  (*Id.*)  Larson

started yelling at Werner and being disrespectful.  (*Id.*)  Larson then began moving

toward the exterior door of the block, at which point staff prevented him from leaving

and physically put Larson back in his cell.  (*Id.*)  Warnygora also submitted an incident

report about the event.  (Dkt. No. 102-11, Ex. 11 at ECF-17.)  For this incident, Larson

was initially placed on administrative segregation for 15 days.  (*Id.* at ECF-15.)

After the June 23, 2017 incident, Larson submitted several kites, alleging that he

was assaulted by staff during the incident (Dkt. No. 102-11, Ex. 11 at ECF-19), that he

wanted to press criminal charges against staff (*id.* at ECF-20, ECF-2), and that staff

should preserve the footage of the incident so Larson could use it in court against the staff

(*id.* at ECF-21).  Larson also requested an "appeal" of the disciplinary report and said that

Greene would be his witness.  (*Id.* at ECF-7.)  Wilmes conducted a hearing in the library

on June 25, 2017, in which Greene was a witness.  (*Id.* at ECF-14-15.)  Wilmes reduced

---

[5]    The Court has reviewed the video footage of the June 2017 incident.  (Dkt. No.
102-12, Ex. 12.)

11

Larson's segregation from 15 days to 7 days. (*Id.*) On July 11, 2017, Larson submitted a police report alleging assault by Werner and Warnygora. (*Id.* at ECF-10.) The Carlton County Sheriff's Office took statements from Larson and Greene and placed a video of the incident into evidence at the Sheriff's Office. (*Id.* at ECF-11-12.)

## II.    LEGAL STANDARD

A court should enter summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As this wording suggests, the initial burden of showing that no genuine issue of material fact exists lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is "material" only if resolving it might affect a suit's outcome under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When assessing a summary judgment motion, a court should believe the nonmovant's evidence and draw all justifiable inferences in the nonmovant's favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). But when a summary judgment motion has been made and the pleadings and affidavits support it, the burden shifts to the nonmovant to show that a disputed issue of material fact remains. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## III.    DISCUSSION

The thrust of the County Defendants' Motion regarding the constitutional claims is that they are entitled to qualified immunity. "The doctrine of qualified immunity protects

12

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court has repeatedly emphasized that qualified immunity is an immunity from suit that should be resolved 'at the earliest possible stage in litigation' to ensure that insubstantial damage claims against government officials are resolved 'prior to discovery.'" *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (quoting *Pearson*, 555 U.S. at 231-32).

"To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, *and* that the right was clearly established at the time of the alleged misconduct." *Johnson*, 903 F.3d at 773 (citing *Pearson*, 555 U.S. at 232). "The district court has discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson*, 555 U.S. at 236). Here, the Court recommends summary dismissal of Carlton County and dismissal of all of Plaintiffs' claims to the extent they seek injunctive relief. The Court also recommends dismissal of all of Plaintiffs' claims except for Greene's First Amendment and Equal Protection claims against Coughlin arising from Greene's Native American religion. The Court also recommends dismissal (without prejudice) of the Doe defendants.

**A.    The Court Recommends that the Carlton County Jail Be Summarily Dismissed.**

The Carlton County Jail was initially summarily dismissed, pursuant to 28 U.S.C. § 1915A,[6] because "county jails – as opposed to the individuals employed by those institutions – are not persons amenable to suit under § 1983."  (Dkt. No. 9 at 2 (citing *De La Garza v. Kandiyohi Cnty. Jail, Correctional Institution*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam)), *R&R adopted*, Dkt. No. 15.)  Plaintiffs did not remove the Carlton County Jail from the Amended Complaint, so it was named as a Defendant once again.  (Dkt. No. 25 ¶ 2.)  However, since "county jails are not legal entities amenable to suit," *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003), the Court recommends that Carlton County Jail be summarily dismissed.

**B.    The Court Recommends that Plaintiffs' Claims for Injunctive Relief Be Dismissed.**

Plaintiffs are no longer inmates at the Carlton County Jail.  (Dkt. No. 102 ¶ 15.) "Claims for equitable and injunctive relief are moot when the plaintiff is no longer subject to the conditions of confinement of which he complains." *Roblero-Barrios v. Ludeman*, 07-cv-4101 (MJD/FLN), 2008 WL 4838726, at *10 (D. Minn. Nov. 5, 2008) (citing *Senty–Haugen v. Goodno*, No. 04–cv-1077 (ADM/JJG), 2005 WL 2917464, at * 3 (D. Minn. Nov. 4, 2005)).  Here, Plaintiffs' claims for injunctive relief became moot when they were transferred out of the Carlton County Jail.  Accordingly, the Court

---

[6]    Section 1915A authorizes the Court to review complaints in which a prisoner seeks redress from a governmental entity, and the Court may dismiss any portion of the complaint that fails to state a claim upon which relief may be granted.

recommends that Plaintiffs' claims be dismissed without prejudice to the extent they seek equitable or injunctive relief.

## C.    Defendants are Entitled to Qualified Immunity on All Claims Except Greene's Religion-Based First Amendment and Equal Protection Claims for Damages.

In their Amended Complaint, Plaintiffs assert numerous constitutional claims against the County Defendants.[7]  The Court addresses each of these claims below.

### 1.    Plaintiffs' Sixth Amendment/Access to the Courts Claim

On June 1, 2017, Larson filed a grievance about his access to legal materials at the Carlton County Jail, in particular that the law library did not have sufficient resources.[8] (Dkt. No. 1-2, Exs. 8.)  Coughlin responded that the law library updates their law books as they get them and that the jail worked with the State Law Library to get additional books based on Larson's grievance.  (*Id.*, Ex. 4.)  Coughlin noted that Larson had exhausted his administrative remedies on the grievance.  (*Id.*)  Coughlin informed Larson that new books arrived on June 21, 2017.  (Dkt. No. 102-10, Ex. 10 at ECF-10.)  On June 24, 2017, Larson filed an additional grievance about access to the law library because he

---

[7]    The Court treats the claims as brought by both Larson and Greene, unless the allegations indicate otherwise.

[8]    Although Count III in the Amended Complaint alleges denial of Plaintiffs' "6th Amendment right to Effective Assistance of Counsel and to Self-Representation" (Dkt. No. 25 at 26), Plaintiffs stated in their "Verified Memorandum" that they are not bringing a Sixth Amendment claim based on any alleged unconstitutionality of Carlton County Jail's grievance process or lack of access to counsel.  (Dkt. No. 118 at 10.)  Accordingly, the Court construes Plaintiffs' Sixth Amendment-based claims as based on grievances relating to the law library.

was only permitted to use the law library during his one hour out of administrative

segregation following his disciplinary incident. (Dkt. No. 102-11, Ex. 11 at ECF-6.)

"[P]risoners have a constitutional right of access to the courts but this right does

not guarantee the ability to discover grievances, and to litigate effectively once in

court." *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (cleaned up). The

Supreme Court has held that a prisoner's right of legal access "guarantees no particular

methodology but rather the conferral of a capability—the capability of bringing

contemplated challenges to sentences or conditions of confinement before the courts."

*Lewis v. Casey*, 518 U.S. 343, 356 (1996). The Court continued:

> When any inmate, even an illiterate or non-English-speaking inmate, shows
> that an actionable claim of this nature which he desired to bring has been lost
> or rejected, or that the presentation of such a claim is currently being
> prevented, because this capability of filing suit has not been provided, he
> demonstrates that the State has failed to furnish "*adequate* law libraries
> or *adequate* assistance from persons trained in the law."

*Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).

Plaintiffs have failed to present any evidence that "an actionable claim [related to

their sentences or conditions of confinement] which [they] desired to bring has been lost

or rejected." *Id.* Although Larson stated that he is a *pro se* defendant and plaintiff in

three other state cases (Dkt. No. 119 ¶ 28), he did not state—or point to any evidence

suggesting—that the cases challenge his sentence or conditions of confinement, nor that

he was harmed in any way by the allegedly inadequate resources at the law library.

Moreover, as it relates to this case, Plaintiffs were able to challenge the conditions of

their confinement at the Carlton County Jail, and there is no evidence that Plaintiffs'

16

claim was frustrated or impeded by the alleged inadequacies in the law library. Indeed, Plaintiffs filed both the original Complaint (Dkt. No. 1) and an Amended Complaint (Dkt. No. 25) setting forth their allegations along with several motions, briefs, and affidavits. Plaintiffs have not identified any lost or rejected claims or a claim that was or is being prevented by the allegedly inadequate law library. Thus, there is no genuine dispute of material fact that Plaintiffs have not suffered an actual injury, as required in an access to courts claim. *See Lewis*, 518 U.S. at 349. The County Defendants are entitled to qualified immunity on Plaintiffs' access to courts claim.

### 2. Plaintiffs' First Amendment Retaliation Claim

Plaintiffs generally assert that the County Defendants retaliated against Plaintiffs in violation of their First Amendment Rights because they filed grievances, made complaints to jail staff, and filed this lawsuit. (*See, e.g.*, Dkt. No. 111 at 3; Dkt. No. 119 at 7.)

"A plaintiff bringing a First Amendment retaliation claim under § 1983 may show that officers violated his constitutional rights if '(1) he engaged in a protected activity, (2) [officers] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Waters v. Madson*, 921 F.3d 725, 741 (8th Cir. 2019) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). An inmate's First Amendment rights, as well as other constitutional rights, may be limited if the regulation is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Wolf v. McDonnell*, 418 U.S. 539 (1974) (constitutional rights of inmates may be

limited by legitimate institutional concerns).  A correctional facility's need to control and discipline inmates in a prison setting is an accepted institutional concern whereby constitutional rights may be limited.  *See generally Wolf*, 418 U.S. at 557, 563-67. Further, to overcome a defense of qualified immunity in a retaliation claim, Plaintiffs "may not respond simply with general attacks upon defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see Technical Ordinance, Inc. v. United States*, 244 F.3d 641, 652 (8th Cir. 2001).

Greene alleges that Wilmes retaliated against him for appealing the May 19, 2017 incident that resulted in his transfer to another cell block.  (Dkt. No. 25 ¶ 100.)  Wilmes reported that Greene became agitated and disrespectful and Wilmes moved Greene from Block 3 to Block 5.  (*See* Dkt. No. 102-15, Ex. 15 at ECF-2.)  After the May 19, 2017 incident, Greene filed a grievance with his version of the incident and a request to be moved back to Block 3.  (*Id.* at ECF-3.)  In the grievance, Greene accuses the jail staff of discriminating against him for being committed to the MSOP.  (*Id.*)  Greene acknowledges that Block 3 was receiving maintenance, so he also asked to be sent to another county jail.  (*Id.*)

Here, the specific protected activity identified by Greene in the Amended Complaint was his appeal of Wilmes' disciplinary report.  (*See* Dkt. No. 25 ¶ 100.) However, Greene has not identified any evidence supporting his allegation that he was moved to or kept in the new block for retaliatory reasons.  Wilmes' report indicates that

Greene was moved to a different block during the incident because other inmates were becoming agitated by Greene's disrespectful behavior. (Dkt. No. 102-15, Ex. 15 at ECF-2.) The video footage of the incident (Dkt. No. 102-16, Ex. 16) supports Wilmes' disciplinary report, showing that Greene got agitated and was moved to the new block at that time. The evidence in the record supports that Greene was moved to Block 5 and kept there due to his behavior during the May 19, 2017 incident (as opposed to for a retaliatory reason). This evidence includes Coughlin's June 16, 2017 letter to Greene explaining that although Greene feels he is "being arbitrarily targeted because of labels, staff do not react to labels, but rather behaviors." (Dkt. No. 102-15, Ex. 15 at ECF-10.) Moreover, there is no evidence in the record supporting Greene's allegation that the decision to keep him in Block 5 was motivated by Greene's appeal of Wilmes' disciplinary report rather than for the legitimate penological purpose of controlling and disciplining Greene for his conduct during the May 19, 2017 incident.[9] Greene's conclusory allegations do not create a genuine issue of material fact or override the County Defendants' entitlement to qualified immunity for that claim.

Larson specifically identifies as retaliation the June 23, 2017 incident in which he was returned to his cell by Warnygora and Werner, which resulted in a disciplinary report and 7 days segregation. (Dkt. No. 119 at 7; *see generally id.* at 4-7.) Larson has not identified any evidence suggesting that Warnygora and Werner's response to his

---

[9]    Since Greene was moved to Block 5 prior to filing his grievance, the move could not have been in response to that later-filed grievance.

movements to the exterior door on June 23, 2017 or the 7 days of segregation imposed on him for the incident were retaliatory or for any other purpose than the legitimate penological purpose of controlling Larson during that incident and disciplining him for his conduct during that incident.[10]  His allegations to the contrary do not create a genuine issue of material fact or override the County Defendants' entitlement to qualified immunity for that claim.

To the extent Plaintiffs generally allege that the complained-of Carlton County Jail conditions and conduct (cold temperatures, lack of sunlight, adequacy and access to the law library, etc.) were retaliatory because Plaintiffs had filed grievances or otherwise complained while at the jail, the County Defendants have provided Coughlin's affidavit and supporting exhibits (Dkt. No. 102, 102-1 to 102-17, Exs. 1-17) as evidence that the jail's conditions meet DOC standards and are unrelated to Plaintiffs' grievances and complaints, and that to the extent that jail staff disciplined Plaintiffs, it was for legitimate penological purposes.  Plaintiffs have identified no affirmative evidence from which a jury could find that the plaintiffs have carried their burden of proving the pertinent retaliatory motive.  *See Crawford-El*, 523 U.S. at 600.  Accordingly, the Court concludes that summary judgment should be granted for the County Defendants on qualified immunity grounds with respect to Plaintiffs' First Amendment retaliation claims.

---

[10]    For the reasons set forth in Section III.C.6 in connection with Larson's excessive force claim arising from the June 23, 2017 incident, the Court recommends dismissal of that claim.

### 3.  Greene's Religion-Based Claims

Greene asserts First Amendment and Equal Protection claims on the grounds that the County Defendants denied him the right to practice his Native American religion and treated him differently from Christian/Caucasian prisoners.[11]  (*See* Dkt. No. 25 ¶ 113; Dkt. No. 112 ¶¶ 10-11.)  In his grievance, Greene claimed that when he asked for Native American programming and Native American religious ceremonies, he was told there was none and that the only programming available was for Christians.  (Dkt. No. 102-15, Ex. 15 at ECF-8.)  Greene alleges this violates his Free Exercise rights to practice his religion and is an Equal Protection violation.  (Dkt. No. 25 at 29-30, Counts I, XIV.)  In his "Affidavit in Support of Motion to Deny Summary Judgment," Greene alleges (albeit vaguely) that a Medicine man attempted to provide Native American religious services at Carlton County Jail.  (Dkt. No. 112 ¶ 11.)

"While prisoners retain their constitutional rights, they are subject to limitations on those rights 'in light of the needs of the penal system.'"  *Gladson v. Iowa Dept. of Corrections*, 551 F.3d 825, 831 (8th Cir. 2009) (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004)).  At the threshold, an inmate must establish that the jail has placed a substantial burden on his sincerely-held religious beliefs.[12] *Id.* at 833. In light of the needs of the penal system, "[a] prison regulation or action is valid [] even if

---

[11]    Larson does not assert that he practices a Native American religion, nor does he assert any religion-based Free Exercise or Equal Protection claim.

[12]    The Court is not in a position to determine whether Greene's religious beliefs are sincerely held.

it restricts a prisoner's constitutional rights if it is reasonably related to legitimate penological interests." *Id.* The Eighth Circuit considers four factors in that determination:

> (1) whether there is a valid rational connection between the prison regulation and the government interest in justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests.

*Id.* (cleaned up).

There is evidence in the record that Plaintiff Greene requested Native American religious programming and ceremonies and that the request was denied. (Dkt. No. 102-15, Ex. 15 at ECF-10.) In particular, Greene's June 12, 2017 grievance stated in full:

> Since my incarceration at Carlton County Jail, the jail administration has been "deliberate [sic] indifferent" to my constitutional right as a Native American Indian to practice my religion. As a Native American, your jail policies are deliberately vague and as written fail to offer Native American Indians such as myself, pipe & drum ceremonies, tobacco offering and smudging.

> When I ask for Native American programming[,] all the jail does is offer programming for the local white people and their Christian Religion.

> I believe and evidence suggest[s] the Carlton County Administration is being racist towards American Indians in denying us religious rights to keep the vicious cycle of Native American incarcerated. And then for the Carlton County Administration to cry for funding at the state legislature for a new jail & "staff training." I demand the constitutional right to practice my Native American religion and not to be treated harshly because of my race . . .

(Dkt. No. 102-15, Ex. 15 at ECF-8.) Coughlin's June 16, 2017 response, as to Greene's grievance about Native American programming, stated:

> On 6/12/17 you filed a grievance about Racial and Religious discrimination. You use the term deliberate indifferent to your rights as a Native American. You said you asked for Native American programming. We will provide any approved programming, but can't create programming if it's not available to us.

(*Id.* at ECF-10.)  In his affidavit in support of the present Motion, Coughlin stated: "On

June 12, 2017, Mr. Greene filed a grievance about Racial and Religious discrimination.

He complained that the jail does not offer Native American programming.  Although we

have tried to coordinate Native American programming, it is not currently available in the

jail and we therefore cannot provide programming not available."  (Dkt. No. 102 ¶ 14.)

In their opening brief, the County Defendants mentioned Greene's Free Exercise

claim and provided the relevant legal standard (Dkt. No. 100 at 17-18 (citing *Turner v.

Safley*, 482 U.S. 78 (1987); *Gladson*, 551 F.3d at 831)), but did not provide argument as

to the claim other than to assert "Greene was offered available programming regarding

his religious requests" (Dkt. No. 100 at 5).  Based on the record before the Court, there is

evidence that Greene requested Native American religious programming and ceremonies,

and none were provided to him.  This is sufficient to create a genuine issue of material

fact as to whether Greene's ability to practice his Native American religion was

substantially burdened.  The only reason for the failure to provide Greene with Native

American programming and ceremonies proffered by the County Defendants was that no

Native American religious programming was available, and the Carlton County Jail

cannot provide programming not available.  (*See* Dkt. No. 102 ¶ 14.)  The County

Defendants did not provide any evidence of the reason for the lack of availability, of any

steps taken by the County Defendants to obtain Native American religious programming,

of the reasons why the requested Native American religious ceremonies could not be performed, or of any alternatives offered by Carlton County Jail (e.g., modified programming, Native American religious books or other items, modified ceremonies, or a space in which Native Americans could perform religious rites). The County Defendants also did not provide any argument as to why the lack of available programming and ceremonies was "reasonably related to legitimate penological interests," *Gladson*, 551 F.3d at 831, and did not address the *Gladson* factors. On the current record, the Court concludes that the County Defendants have not met their burden to establish qualified immunity at this stage of the case.[13]

As to Greene's Equal Protection claim regarding his right to practice his Native American religion, the Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is well established that when the government distributes burdens or benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny." *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007). "However, in prison cases, courts will ordinarily defer to the expert judgment of prison authorities, due to the difficulty of running a prison and the commitment of the task to the responsibility of the legislative and executive

---

[13] The County Defendants also did not raise exhaustion of administrative remedies in their briefing, and the Court cannot *sua sponte* dismiss a claim for failure to exhaust administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 213-15 (2007) (holding that *sua sponte* dismissal for failure to exhaust administrative remedies is appropriate only when the failure is apparent from the allegations in the complaint).

branches." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999). Jail officials "may restrict the religious practices of inmates only if such deprivation is necessary to further legitimate penological interests." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999).

Here, for the same reason as for the Free Exercise claim, the Court recommends that summary judgment be denied as to Greene's Equal Protection claim. There is evidence in the record that Greene was denied the right to Native American programming and ceremonies (Dkt. No. 102-15, Ex. 15 at ECF-10), but the County Defendants failed to present evidence or argue that "such deprivation is necessary to further legitimate penological interests." *Rouse*, 193 F.3d at 942; *see also Thomas v. Dakota County L. Enf't Ctr.*, 15-2197 (JRT/HB), 2016 WL 1248674, at *4 (D. Minn. Mar. 29, 2016) ("Here, Thomas's religion-related equal protection claims survive Dakota County Defendants' motion to dismiss for all the reasons provided by the Magistrate Judge in relation to Thomas's surviving First Amendment claims."). Accordingly, the Court recommends denial of summary judgment as to Greene's religion-based Equal Protection claim.[14]

However, the Court recommends dismissal of Greene's religion-based First Amendment and Equal Protection claims against all of the County Defendants except

---

[14]    Greene alleged Equal Protection violations based on allegedly discriminatory canteen and medical billing procedures related to Native Americans' receipt of tribal per capita payments. (Dkt. No. 25.) The County Defendants submitted the Carlton County Inmate Handbook describing race- and religion-neutral canteen and medical payment procedures, and Greene has identified no evidence suggesting that Carlton County Jail implements those procedures in a discriminatory manner. (Dkt. No. 102-1, Ex. 1.) The Court therefore recommends dismissal of his Equal Protection claim based on these procedures.

Coughlin.  "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation."  *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).  There is no evidence of any involvement of any of the other County Defendants with respect to Greene's requests for Native American religious programming and ceremonies.  (*See generally* Dkt. No. 102-15, Ex. 15 at ECF-8, 10.)  The Amended Complaint also does not contain allegations regarding any other specific County Defendants related to Greene's religious claims.  (*See* Dkt. No. 25 ¶ 113.)  Accordingly, the Court recommends that Greene's religion-based claims proceed only as to Coughlin.

### 4.  Greene's Claims Related to His Arrest Warrant

Greene claims his Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated when he was arrested at the MSOP based on what he contends was an invalid arrest warrant.  (Dkt. No. 25 ¶¶ 60-67, Count IX.)  In the Amended Complaint, Greene alleged that one of the County Defendants submitted an affidavit in support of the warrant that Greene failed to appear for sentencing.  (*Id.* ¶ 64.)  Greene also alleged that the arresting officers invaded Greene's privacy in conducting the arrest.  (*Id.* ¶¶ 65-67.)

On March 27, 2017, Carlton County District Judge Leslie Beiers issued an arrest warrant for Greene to serve the remaining balance of his sentence in Case No. 09-CR-14-1518-1.  (Dkt. No. 102-14, Ex. 14.)  Greene has offered no evidence that any of the County Defendants were involved in the issuance of the warrant, and the warrant itself is facially valid and makes no reference to any of the County Defendants.  (*See id.*)  "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause

of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844

F.2d 567, 569 (8th Cir. 1988) (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).  Thus, to

the extent Greene's claim relates to the County Defendants' arrest of him pursuant to the

arrest warrant, the County Defendants are entitled to qualified immunity.

 Greene's claim of violation of privacy also fails because he was arrested pursuant

to a facially valid arrest warrant.  "A valid arrest warrant carries with it the implicit but

limited authority to enter the residence of the person named in the warrant in order to

execute that warrant." *United States v. Risse*, 83 F.3d 212, 215 (8th Cir. 1996) (citing

*Payton v. New York*, 445 U.S. 573, 603 (1980)).  "Because an arrest warrant authorizes

the police to deprive a person of his liberty, it necessarily also authorizes a limited

invasion of that person's privacy interest when it is necessary to arrest him in his home."

*Steagald v. United States*, 451 U.S. 204, 214 (1981).  The County Defendants are entitled

to qualified immunity on Plaintiffs' invasion of privacy claim.

 To the extent Greene asserts an Eighth Amendment claim based on this arrest, the

Eighth Amendment standard applies "only after the State has complied with the

constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham*

*v. Wright*, 430 U.S. 651, 671, n.40 (1977).  Further, the Eighth Amendment standard is

less protective than the Fourth Amendment standard. *Graham v. Connor*, 490 U.S. 386,

398 (1989).  The Court therefore recommends dismissal of Greene's Eighth Amendment

claim based on this arrest.

### 5.  Plaintiffs' Cruel and Unusual Punishment Claim

Plaintiffs' cruel and unusual punishment claim alleges that conditions at the

Carlton County Jail are inhospitable, including lack of sunlight, cold temperature,

unclean conditions, substandard meals, and denying inmates clean clothing and towels

such that the conditions constitute a violation of the Eighth Amendment.  (Dkt. No. 25 ¶¶

56, 74, 78.)

The Eighth Amendment—applied to states through the Fourteenth Amendment—

imposes a constitutional limitation on punishments such that they cannot be "cruel and

unusual."  U.S. Const. amend. VIII; *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).  In a

prison setting, "[c]onditions must not involve the wanton and unnecessary infliction of

pain, nor may they be grossly disproportionate to the severity of the crime warranting

imprisonment," but "[t]o the extent that such conditions are restrictive and even harsh,

they are part of the penalty that criminal offenders pay for their offenses against society."

*Rhodes*, 452 U.S. at 347.  "[T]he Constitution 'does not mandate comfortable prisons'; it

prohibits 'inhumane ones.'"  *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

To establish that conditions of confinement violate the Eighth Amendment, the

plaintiff "must show that (1) the alleged deprivation is sufficiently serious that it denies

'the minimal civilized measure of life's necessities,' and (2) the prison officials were

deliberately indifferent to 'an excessive risk to inmate health or safety.'"  *Seltzer-Bey v.

Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (quoting *Williams v. Delo*, 49 F.3d 442, 445 (8th

Cir. 1995)); *see also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).  An Eighth

28

Amendment claim is evaluated by applying a subjective component and an objective component.  "Thus, courts considering a prisoner's claim must ask both if the officials acted with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (cleaned up).  Here, however, the Court need only address the objective component.

Plaintiffs have provided some evidence of limited sunlight or natural light in their cells and cell blocks (Dkt. No. 1-2, Ex. 4) and complain that they cannot see grass and do not have a "view" out of their cell windows (Dkt. No. 121 ¶ 18).  Plaintiffs assert that the videos of the May 19, 2017 and June 23, 2017 incidents (Dkt. No. 102-12 and 102-16) demonstrate the lack of sunlight in their cell blocks.  (Dkt. No. 121 ¶¶ 17, 24-26.)  However, Plaintiffs admit that their "cell windows are facing into an enclosed courtyard and are glazed" (Dkt. No. 121 ¶ 18), that a "**very** small amount of sunlight" comes into cell block windows in Block 3 (*id.* ¶ 25 (emphasis in original)), and that Greene's cell in Block 5 had a window (*id.* ¶ 26).  Further, the County Defendants have submitted unrebutted evidence that the courtyard has an outside window and that Plaintiffs have access to the courtyard (Dkt. No. 102-15 (informing Greene on June 13, 2017: "You have access to the courtyard that has an outside window.  Your cellblock has a window that allows in the natural light from that window.")), and the videos of the May 19, 2017 and June 23, 2017 incidents in blocks 3 and 5 demonstrate that the blocks are sufficiently illuminated (Dkt. Nos. 102-12, 102-16).  Notwithstanding Plaintiffs' dissatisfaction with the view and access to direct sunlight afforded through their cell windows and cell

blocks, there is no evidence suggesting that Plaintiffs were deprived of sunlight during their time at Carlton County Jail, much less that the amount of sunlight accessible in their cells and cell blocks was sufficiently harmful to establish a violation of the Eighth Amendment. There is no genuine issue of material fact as to whether Plaintiffs' Eighth Amendment rights were violated based on their access to sunlight, and the County Defendants are entitled to qualified immunity on this claim.

Plaintiffs also presented evidence of mildly cold cell temperatures for a limited time at Carlton County Jail. (Dkt. No. 1-2, Ex. 16.). "[A] low cell temperature at night combined with a failure to issue blankets" may become cruel and unusual punishment. *Tokar v. Armontrout*, 97 F.3d 1078, 1082 (8th Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). However, the evidence in the record shows that the only period of cold temperatures—below 68-72 degrees Fahrenheit—was for a brief period at the end of June 2017 in which the heating system was temporarily broken, and it is undisputed the Plaintiffs were given blankets during that time. (Dkt. No. 102-13, Ex. 13 at 2 ("As you noted, maintenance was working on fixing the air handler for the Jail. You were given an extra blanket to assist with the issue of cold air. The part is now installed and the systems are operating normally again."); Dkt. No. 25 ¶ 41.) Accordingly, the Court concludes that there is no genuine issue of material act as to Plaintiffs' claims based on the cell temperatures and that Defendants are entitled to qualified immunity on this claim.

With respect to the cleanliness of Plaintiffs' cells and common areas, the County Defendants have provided evidence that Carlton County Jail has passed DOC inspections. (Dkt. No. 102 ¶ 16.) Plaintiffs assert that the videos of the May 19, 2017 and June 23,

2017 incidents demonstrate that their cells and the cell blocks were "filthy." (Dkt. No. 121 ¶¶ 32, 39.) The Court has reviewed the videos and concludes that they do not show the cells and cell blocks were "filthy" or sufficiently unclean to establish a violation of the Eighth Amendment. Accordingly, the Court concludes that there is no genuine issue of material fact as to whether the cleanliness of Plaintiffs' cells and cell blocks constitutes an Eighth Amendment violation.

Plaintiffs allege violations of the Eighth Amendment based on the fact that they received clean clothing twice a week, received clean towels once a week, received one hot meal a day during the weekends and "never" a hot breakfast, and were deprived of pillows. (Dkt. No. 25 ¶ 56 (emphasis original).) Assuming for the purposes of this Motion that those allegations are supported by evidence, the Court finds that these conditions are not sufficiently serious that they denied Plaintiffs the minimal civilized measure of life's necessities. *See Seltzer-Bey*, 66 F.3d 961 at 964. Plaintiffs' complaints regarding laundry, meals, and bedding do not rise to the level of a constitutional violation.

Accordingly, the Court concludes that there is no genuine dispute of material fact as to Plaintiffs' Eighth Amendment claim and that Defendants are entitled to qualified immunity.

### 6. Larson's Excessive Force Claim

Larson's excessive force claim arises out of his June 2017 disciplinary incident in which, according to Werner's report, Larson became visibly upset and threatening after Werner commented on Larson and Greene "laying in their bunks cuddled in their

blankets." (Dkt. No. 102-11, Ex. 11 at ECF-18.) While still aggressive and upset, Larson made a move toward the exterior door so Defendants Werner and Warnygora physically moved Larson into his cell. (*Id.*) Larson claims this force was unconstitutionally excessive under the circumstances. (Dkt. No. 25 ¶¶ 40-51.)

"To state an excessive force claim under the Fourth Amendment, a plaintiff must show that an officer's use of force was 'objectively unreasonable, given the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Waters v. Madson*, 921 F.3d 725, 739 (8th Cir. 2019) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 905-06 (8th Cir. 2011)).

The video footage from the incident (Dkt. No. 102-12, Ex. 12) shows the scene as portrayed in Defendants' reports. Werner comes into the block to do a well-being check and sees Greene and Larson in their bunks and comments on it. (*Id.*) Larson then becomes visibly agitated and upset and appears to be yelling at Werner. (*Id.*) Warnygora then arrives to support Werner, at which time Larson makes a move toward the exterior door. (*Id.*) Warnygora and Werner then forcibly move Larson back into his cell and slam the door to the cell after Larson is in his cell. (*Id.*) However, there is no evidence that the Warnygora and Werner used more than minimal force, particularly in light of the aggressive behavior exhibited by Larson.[15] "[A] de minimis use of force cannot form the

---

[15]    The Court notes that this incident was described as "tussling" in the Amended Complaint (Dkt. No. 25 ¶ 109) and that the Amended Complaint describes Larson's physical injuries as "*Di-mini-mis*" (*id.* ¶ 110). While Larson's de minimis injuries are not dispositive of the question of excessive force, "it may well be that most plaintiffs

basis for a Fourth Amendment excessive force claim, [so] it cannot be objectively unreasonable in this context." *Waters*, 921 F.3d at 740 (citation omitted); *see also Cavataio v. City of Bella Villa*, 570 F.3d 1015, 1017, 1020 (8th Cir. 2009) (finding that an officer used de minimis force when he kneed the non-resistant, handcuffed, 75-year-old arrestee while placing him in a patrol car).

Larson claims in Plaintiffs' Supplemental Memorandum that the video of this incident shows Warnygora unlatching his taser when he enters the cell block and reaching for it when Larson approaches a phone. (Dkt. No. 121 ¶¶ 44-46.) Assuming for purposes of this Motion that Larson's assertions are true, Warnygora did not draw, much less use, his taser, and the acts of unlatching and reaching towards his taser do not constitute unreasonable force in light of Larson's conduct during the June 23, 2017 incident. *See Policky v. City of Seward, Neb.*, 433 F. Supp. 2d 1013, 1022 (D. Neb. 2006) (finding an officer's "precautionary" drawing of a taser on a suspect whom he believed to be combative and who may have been holding something in his hand was objectively reasonable and amenable to summary judgment); *Clark v. Rusk Police Dep't*, No. 6:07CV340, 2008 WL 4179322, at *3 (E.D. Tex. Sept. 8, 2008) (finding that dismissal of an excessive force claim was appropriate where an officer draws, but does not discharge, a taser on a suspect who refused to exit his vehicle despite multiple commands to do so). In sum, notwithstanding Larson's allegations of excessive force,

---

showing only de minimis injury can show only a corresponding de minimis use of force. The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." *Chambers*, 641 F.3d at 906.

the video demonstrates that Warnygora and Werner's use of force was reasonable. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Because there is no genuine dispute of material fact that Defendants did not apply objectively unreasonable force against Larson, there is no constitutional violation and Defendants are entitled to qualified immunity.

### 7. Greene's Excessive Force Claim

Greene's excessive force claim arises out of his May 19, 2017 disciplinary incident, in which Greene confronted Wilmes about a form related to another inmate's civil case that Greene sent to him the day before. (Dkt. No. 103-15, Ex. 15 at ECF-2.) Wilmes received the form, but did not know what it was, so he recycled it. (*Id.*) Greene then became upset, raised his voice, and called Wilmes disrespectful names. (*Id.*) About a half hour later, Wilmes found the form in the recycling bin, and returned to discuss it with Greene. (*Id.*) Greene then became even more upset and disrespectful. (*Id.*) After Greene moved toward an accompanying officer, Wilmes and the officer escorted Greene from his current block (Block 3) to another block (Block 5) to lock him down. (*Id.*) Greene asserts that Wilmes' use of force was excessive and was in retaliation for Greene's attempts to exercise his First Amendment right to file a civil rights complaint. (Dkt. No. 102 at 4-6.)

Greene claims the use of an "arm bar" and threats to use a taser constitute the use of excessive force. (Dkt. No. 111 at 5-7.) Greene does not identify any physical injury

34

resulting from the arm bar.  Having reviewed the video and Greene's aggressive conduct towards Wilmes and the other officer, the Court finds that there is no issue of material fact that the use of an "arm bar" under the circumstances was not unreasonable.  *See Cravener v. Shuster*, 885 F.3d 1135, 1139 (8th Cir. 2018) (use of arm bar that broke inmate's arm was reasonable after inmate refused 20 times to comply with reasonable instructions); *Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) (holding no excessive force where the officer used an "arm-bar maneuver" on a man being booked in prison, who had no weapon but "refused to comply with directions, loudly abused the correctional officers, and aggressively leapt toward" one officer); *Reed v. City of St. Charles*, 561 F.3d 788, 791-92 (8th Cir. 2009) (affirming summary judgment on excessive force claim for officers who used batons and mace against a subject resisting arrest).

As to the taser, Greene asserts that Wilmes threatened to use it, but does not claim that Wilmes used or even drew his taser.  (Dkt. No. 111 at 7.)  The Court's review of the video of this incident confirms that Wilmes did not draw his taser.  Given Greene's behavior during the incident, the Court finds that even if Wilmes had threatened to use the taser, the threat would have been reasonable in view of the circumstances.  *See Policky,* 433 F. Supp. 2d at 1022; *Clark*, 2008 WL 4179322, at *3.

Finally, Greene has not identified any evidence showing that the officers' conduct during the May 19, 2019 incident was due to his attempts to file a civil rights action rather than based on the legitimate penological purpose of maintaining control during the incident and disciplining Greene for his conduct at that time.

35

In sum, there is no genuine dispute of material fact that the County Defendants did not apply objectively unreasonable force against Greene, there is no constitutional violation, and Defendants are entitled to qualified immunity.

### 8. Plaintiffs' Involuntary Servitude Claim

Plaintiffs' Thirteenth Amendment claim is based on the Carlton County Jail's policy requiring inmates to clean their cell and assist in cleaning some common areas (*see* Dkt. No. 102-1, Ex. 1 at 4). Plaintiffs claim this policy constitutes involuntary servitude in violation of the Thirteenth Amendment. (Dkt. No. 25 ¶ 75.)

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. As the text of the Thirteenth Amendment makes clear, the prohibition on involuntary servitude does not apply to duly convicted inmates serving their sentence. *See United States v. Reynolds*, 235 U.S. 133, 149 (1914) ("There can be no doubt that the state has authority to impose involuntary servitude as a punishment for crime. This fact is recognized in the 13th Amendment, and such punishment expressly excepted from its terms."). Moreover, even for pretrial detainees, "being assigned general housekeeping duties is not protected by the Thirteenth Amendment." *Mendez v. Haugen*, 14-cv-4792 ADM/BRT, 2015 WL 5718967, at *1 (D. Minn. Sept. 29, 2015) (citing *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)).

Here, both Larson and Greene were serving criminal sentences at the Carlton County Jail (Dkt. No. 102-2, Ex. 2; Dkt. No. 101-2, Ex. 2), so the Thirteenth

Amendment's involuntary servitude prohibition did not apply. Additionally, the basic "general housekeeping" at a county jail like Carlton County is not encompassed by the Thirteenth Amendment. *See Mendez*, 2015 WL 5718967, at *1. For these reasons, Defendants are entitled to qualified immunity on Plaintiff's Thirteenth Amendment claim.

### 9. Plaintiffs' Deliberate Indifference to Medical Needs Claim

In their Amended Complaint, Plaintiffs assert that Carlton County Jail was deliberately indifferent to their medical needs by charging them for food. (Dkt. No. 25 ¶ 80.) On January 31, 2019, in "Plaintiffs['] Memorandum of Law in Support of the Motion to Not Grant Summary Judgment for Defendants," Greene alleged deliberate indifference based on Plaintiffs' confinement to Block 5 (Dkt. No. 11 at 11-12) and alleged that they suffer from "mental, emotional and psychological problems to qualify for civil commitments at MSOP." (*Id.* at 12.) Greene asserts he suffers from depression, suicidal thoughts, lack of trust, and fear of being assaulted and retaliated against by the County Defendants and MSOP employees and that Larson suffers from mental, emotional and psychological problems that have "spilled over" to his current confinement at MSOP. (Dkt. No. 112 ¶¶ 16-18.) Larson, however, did not allege any such mental, emotional, or psychological problems in a declaration he signed on February 11, 2019. (Dkt. No. 119.)

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153,

173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. But "this does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). "Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1991) (citations omitted).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). The plaintiff "must demonstrate (1) that he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784. To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from

38

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiffs have presented no evidence demonstrating that they suffered from an "objectively serious medical need" while incarcerated at Carlton County Jail (either diagnosed by a physician as requiring treatment or so obvious that a layperson would easily recognize it) or that any of the County Defendants knew of and disregarded it such need. The only evidence of record relating to any alleged medical need is Greene's assertion that his inability to see the sun and green grass was making him depressed and exacerbating his mental and emotional problems. (Dkt. No. 102-15 at ECF-9.) Greene has not provided any evidence that he was diagnosed with depression or other mental or emotional problems by a physician while at Carlton County Jail or that a layperson would easily recognize the need to see direct sunlight or green grass as a serious medical need. Greene also has not provided any evidence (or asserted) that he sought medical treatment for the alleged depression and mental and emotional problems while at Carlton County Jail. Further, Coughlin responded three days after Greene filed his grievance by informing Greene that he had access to Nursing and Doctor Services while incarcerated at Carlton County Jail. (Dkt. No. 102-15 at ECF-10.) No evidence suggests that Greene or Larson sought those services while at Carlton County Jail. Accordingly, the Court recommends dismissal of Plaintiffs' deliberate indifference to medical needs claims. *See Jones v. Minnesota Dept. of Corrections*, 512 F.3d 478, 483 (8th Cir. 2008) (affirming grant of summary judgment where plaintiff Jones never expressed a need for medical attention).

### 10. Plaintiffs' *Monell* Claims

Plaintiffs also allege two *Monell* claims,[16] including that the Carlton County Jail financially exploits and overcharges canteen accounts and inadequately trains staff with regard to passing out mental health medications to inmates and in de-escalation tactics. (Dkt. No. 25 ¶¶ 89, 93-98.)  *Monell* is the proper construct for Plaintiffs' claims against Defendants in their official capacities, which Plaintiffs have alleged (Dkt. No. 25 at 30). *Haggins v. Ramsey County*, 0:15-CV-59-DWF-KMM, 2019 WL 885659, at *3 (D. Minn. Jan. 30, 2019) (citing *Slaughter v. Lawrenz*, 2017 WL 4862764 at *5 (D. Minn. Oct. 26, 2017)) ("Where a plaintiff asserts that officers acted in their official capacities, the Court construes the complaint as raising a *Monell* claim.").

To survive summary judgment on a Section 1983 *Monell* claim, a plaintiff must offer evidence sufficient to demonstrate a genuine dispute of material fact that "a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" *Mettler*, 165 F.3d at 1204 (alteration in original) (quoting *Monell*, 436 U.S. at 694); *see also Henderson v. Clark*, CIV. 13-2917 DWF/LIB, 2014 WL 5795030, at *7 (D. Minn. Oct. 1, 2014) (citing *Mettler*, 165 F.3d at 1204), *R&R adopted* (D. Minn. Nov. 6, 2014).

---

[16]    In *Monell v. Department of Social Services*, the Supreme Court held that a municipality is a "person" that can be liable under § 1983.  436 U.S. 658, 690 (1978). However, "a municipality may not be held vicariously liable for the unconstitutional acts of employees."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing *Monell*, 436 U.S. at 694).  "Municipalities and other local governmental entities can be sued under § 1983 only for the entity's unconstitutional or illegal policies or customs." *Garcia*, 2010 WL 1904917, at *8 (citing *Monell*, 436 U.S. at 694).

Regarding Plaintiffs' allegations that the Carlton County Jail financially exploits inmates, Plaintiffs have failed to point to any evidence of any policy or custom that the Carlton County Jail has implemented that exploits inmates' accounts. Plaintiffs also have not provided any evidence that any policy is the "moving force" behind any constitutional violation. The evidence of record establishes that there is no genuine dispute regarding the Carlton County Jail's policy. Accordingly, Plaintiffs have failed to meet their burden at summary judgment. *Celotex Corp.*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Plaintiffs also have not provided any evidence to support their failure-to-train claim. "A municipality may be liable under § 1983 for failure to train where (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the constitutional rights of others, such that the 'failure to train reflects a "deliberate" or "conscious" choice' by the municipality; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's constitutional injury." *Rodgers v. Knight*, 781 F.3d 932, 942 (8th Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion)).

"A 'mere allegation of inadequate training will not give rise to a genuine dispute of material fact on the subject.'" *Rodgers*, 781 F.3d at 943 (quoting *Seymour v. City of*

41

*Des Moines*, 519 F.3d 790, 801 (8th Cir. 2008)). The Supreme Court has described the test for deliberate indifference in training as needing to show it was "highly predictable" that constitutional violations would occur absent additional training. *Connick v. Thompson*, 563 U.S. 51, 71 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62.

Plaintiffs failed to present any evidence linking the alleged inadequate training to any alleged constitutional violation. Plaintiffs had to prove that the deficiency in training actually caused their alleged injuries, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989), but have provided no evidence of any such link. Plaintiffs also have not shown a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. Instead, Plaintiffs have only pointed to Larson's June 23, 2017 disciplinary incident as the alleged incident in which inadequate training in de-escalation tactics resulted in injuries. To prove a failure-to-train claim where there is only an isolated incident, a plaintiff must show "that the municipality had 'failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'" *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 393 (8th Cir. 2007) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty, Okl. v. Brown*, 520 U.S. 397, 409 (1997)). To determine whether the need for training was "obvious," courts look "to whether the employee violated a 'clear constitutional duty' and whether there were 'clear constitutional guideposts' for municipalities in the area." *Id.* (quoting *City of Canton*,

42

489 U.S. at 396-97).  Here, as discussed in Part III.B.6, there was no constitutional

excessive force violation, so the incident cannot support a failure-to-train claim.

Moreover, there is no evidence to support any injuries or any link between alleged

injuries and the allegedly inadequate training.  The Court finds that there is no genuine

issue of material fact regarding the adequacy of Carlton County's training policies or that

any such policies actually caused Plaintiffs' injuries—both essential elements of the

failure-to-train claim.  *Rodgers*, 781 F.3d at 942.  Accordingly, the Court recommends

that Plaintiffs' *Monell* claims be dismissed.

## D.    The Court Recommends Dismissal of Plaintiffs' State Law Claims.

Plaintiffs also allege claims of intentional infliction of emotional distress and

negligent infliction of emotional distress.  (Dkt. No. 25 at Counts XI, XII.)  To prevail on

a claim of intentional infliction of emotional distress, plaintiffs must establish: "(1) the

conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it

caused emotional distress; and (4) the distress was severe."  *K.A.C. v. Benson*, 527

N.W.2d 553, 560 (Minn. 1995) (citing *Hubbard v. United Press Int'l., Inc.*, 330 N.W.2d

428, 438–39 (Minn. 1983)).  "A plaintiff may recover for negligent infliction of

emotional distress when that plaintiff is within a zone of danger of physical impact,

reasonably fears for his or her own safety, and consequently suffers severe emotional

distress with resultant physical injury."  *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902,

907 (Minn. App. 1987) (citing *Stadler v. Cross*, 295 N.W.2d 552, 553 (Minn. 1980)).

The County Defendants contend they are entitled to official and statutory

immunity on both Plaintiffs' state law claims.  "Officials are entitled to official immunity

43

against state law claims in Minnesota if they are engaged in discretionary acts taken in the course of their official duties." *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1043 (8th Cir. 2006) (citing *Sletten v. Ramsey County*, 675 N.W.2d 291, 299 (Minn. 2004)). Discretionary acts require the exercise of individual judgment in carrying out the official's duties. *Fedke v. City of Chaska*, 685 N.W.2d 725, 729 (Minn. App. 2004). Discretionary acts are distinguished from ministerial duties, which are "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Id.* Statutory immunity, which applies only to governmental entities, protects policy-making activities at the planning level. *Miskovich v. Indep. Sch. Dist. 318*, 226 F. Supp. 2d 990, 1027 (D. Minn. 2002) (citing *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 719 (Minn. 1988)).

It is unclear from the Amended Complaint what conduct Plaintiffs contend rises to the level sufficient for either intentional or negligent infliction of emotional distress claims. (Dkt. No. 25 at Counts XI, XII (alleging "[t]he above-described conduct by Defendants . . . was extreme and outrageous . . .").) However, the only claims for which Plaintiffs even generally allege emotional distress—an element of each of the claims—are Larson's June 2017 incident (*id.* ¶ 110), Greene's arrest pursuant to an arrest warrant (*id.* ¶ 66), the allegedly inadequate training (*id.* ¶ 89), and the lack of sunlight (*id.* ¶ 74) and cold temperature (*id.* ¶ 107) in Plaintiffs' cells. Thus, the Court will only consider the emotional distress claims to be applicable to these incidents.

Regarding the allegedly inadequate training at the jail, Sheriff Lake, in her official capacity, is entitled to statutory immunity. *See Hassan v. City of Minneapolis*, CIV. 04-

3974 DWF/JSM, 2006 WL 2583182, at *10 (D. Minn. Sept. 1, 2006) ("[A] city's

decisions regarding the training of its police officers are policy decisions protected by

statutory immunity."); *Holscher v. Hawley*, 08-cv-5310 (JMR/RLE), 2010 WL 3269953,

at *6 (D. Minn. Aug. 17, 2010) (collecting cases finding that statutory immunity applies

to county and its sheriff). The remainder of the claims involve discretionary acts,

including determinations as to the functioning of the jail or in the arrest pursuant to an

arrest warrant, by the County Defendants in the course of their official duties, and thus

the County Defendants are entitled to official immunity in both their individual and

official capacities. *See Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn.

1998) ("When applicable, vicarious official immunity protects the government entity

from suit based on the official immunity of its employee."). Accordingly, the Court finds

that the County Defendants are immune from suit as to Plaintiffs' intentional infliction of

emotional distress and negligent infliction of emotional distress.

## E.    The Court Recommends that the Doe Defendants Be Dismissed.

"[A]n action may proceed against a party whose name is unknown if the complaint

makes allegations specific enough to permit the identity of the party to be ascertained

after reasonable discovery." *Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37

(8th Cir. 1995). Dismissal of an unknown defendant is proper "when it appears that the

true identity of the defendant cannot be learned through discovery or the court's

intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). Moreover, if "after

the completion of discovery, Plaintiffs have not ascertained the identity of or established

any facts regarding these unnamed Defendants," dismissal is proper. *Gold Star Taxi &*

*Transp. Serv. v. Mall of Am. Co.*, 987 F. Supp. 741, 753 (D. Minn. 1997). The failure to name the unknown defendants also prevents Plaintiffs from properly serving them—and thus the claims against them must be dismissed under Fed. R. Civ. P. 4(m). *See Zimmerman v. Bellows*, 988 F. Supp. 2d 1026, 1033 (D. Minn. 2013) (citing Fed. R. Civ. P. 4(m)).

Here, although it was proper for Plaintiffs to make allegations against the Doe Defendants in the Amended Complaint, Plaintiffs have not identified these unknown defendants even after the close of discovery. Their failure to do so—and hence their failure to serve them pursuant to Rule 4(m)—mandates dismissal without prejudice. *See Brown v. City of Bloomington*, 280 F. Supp. 2d 889, 892 (D. Minn. 2003) ("In this case, the discovery deadline has passed, and Brown has neither named nor served the unidentified officers. Accordingly, the Court dismisses the action without prejudice as to the unidentified officers."). Thus, the Court recommends that Plaintiffs' claims against an unknown number of John Does and Jane Does be dismissed without prejudice.

## F.  Plaintiffs' Request for a Medical Expert and for Counsel

In their briefing, Plaintiffs request that the Court appoint a medical/psychological expert "to aid the court in determining the complex and sophisticated questions regarding plaintiffs' serious medical/psychological needs and deliberate indifference." (Dkt. No. 111 at 13.) Plaintiffs have twice moved for appointment of a medical expert (Dkt. Nos. 60, 84), and were denied both times (Dkt. Nos. 75, 91). Thus, Plaintiffs request is an improper motion for reconsideration, *see* D. Minn. LR 7.1(j) ("Except with the court's prior permission, a party must not file a motion to reconsider."), which should be denied

46

for that reason alone.  For the reasons stated in the Court's September 25, 2018 Order,

Plaintiffs' request for appointment of a medical expert is denied.  Further, the Court finds

that there is no evidence in the record of any injuries sustained by Plaintiffs that would

require or warrant any expert testimony, or that expert evidence regarding Plaintiffs'

medical/psychological needs would have changed the outcome of the Defendants'

Motion.  The Court has not recommended dismissal of any claim because Plaintiffs

lacked expert medical evidence of the harm allegedly suffered by Plaintiffs.[17]  Rather, the

Court has recommended dismissal because Defendants are entitled to qualified or official

immunity or there is a lack of evidence supporting a constitutional violation.  Moreover,

Plaintiffs have not submitted any evidence that they requested medical attention or care

while incarcerated at the Carlton County Jail.  For these reasons, the Court denies

Plaintiffs' request for appointment of a medical expert.

In their briefing, Plaintiffs also request appointment of counsel (Dkt. No. 111 at

13), which has already been denied twice in this case (Dkt. Nos. 20, 105).  To the extent

Plaintiffs seeks reconsideration of these orders, the Court denies appointment of counsel.

"There is no constitutional right to appointed counsel in civil cases."  *Phillips v. Jasper*

*County Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citing *Edington v. Missouri Dep't of*

---

[17]    The Court recommends dismissal of Plaintiffs' deliberate indifference to medical
needs claim because Plaintiffs did not identify evidence that they suffered objectively
serious medical needs while incarcerated at Carlton County Jail and that the prison
officials actually knew of but deliberately disregarded those needs.  *See Dulany*, 132 F.3d
at 1239.  As noted above, neither Plaintiff provided any evidence that he was
diagnosed with a serious medical need or sought and were denied medical or psychological
treatment by Carlton County Jail.  Appointment of a medical expert would not cure that
lack of evidence.

*Corr.*, 52 F.3d 777, 780 (8th Cir. 1995)).  Although it is true that "[i]n civil rights matters the court may, pursuant to 28 U.S.C. § 1915, 'request' an attorney to represent a party if, within the court's discretion, the circumstances are such that would properly justify such a request."  *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982).  Among the factors to be considered by the district court in determining whether to appoint counsel in a civil case are "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments."  *Phillips*, 437 F.3d at 794.  Here, Plaintiffs have demonstrated their familiarity with the underlying facts and their ability to litigate this matter, including by filing a complaint and amended complaint, making various requests of the Court via motions, filing responses and supporting exhibits in opposition to the present motion, and citing various statutes and case law in their filings with the Court.  Accordingly, the Court denies the request for appointment of counsel.[18]

## IV.    RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.  The Carlton County Jail be **DISMISSED**.

---

[18]    Plaintiffs also ask the Court to compel MSOP to allow Plaintiffs access to legal websites on the client network system.  The Court has no jurisdiction over MSOP, which is not a party, with regard to this case,

2.  Defendants' Motion to Dismiss or Alternatively [for] Summary Judgment (Dkt. No. 98) be **GRANTED IN PART AND DENIED IN PART**.

3.  Plaintiffs' claims be **DISMISSED WITHOUT PREJUDICE** to the extent they seek injunctive relief.

4.  Plaintiffs' claims against Carlton County Jail be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A.

5.  Plaintiffs' claims against Carlton County Sheriff, Kelly Lake; Deputy Sheriff Brian Belich; Jail Sergeant Jason Wilmes; Jail Sergeant Dave Kumanen; Cammi Werner; and Travis Warnygora be **DISMISSED WITH PREJUDICE**.

6.  Plaintiffs' claims—with the exception of Greene's Free Exercise and Equal Protection religious claims—against Jail Administrator Paul Coughlin be **DISMISSED WITH PREJUDICE**.

7.  Plaintiffs' Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress be **DISMISSED WITH PREJUDICE**.

8.  Plaintiffs' claims against an unknown number of John Does and Jane Does be **DISMISSED WITHOUT PREJUDICE**.

9.  Plaintiffs' request for appointment of a medical/psychological expert and for appointment of counsel be **DENIED**.

DATED: June 10, 2019                    _s/Elizabeth Cowan Wright_
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).